*36
 
 FREDERICKS HOMBERG WICKER, Judge.
 

 |2On June 24, 2005, the State charged the defendant with armed robbery in violation of La. R.S. 14:64. After a verdict of guilty as charged, the trial judge sentenced the defendant to thirty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The trial judge also imposed an additional five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence pursuant to La. R.S. 14:64.3, which imposes an enhanced sentence when an armed robbery is committed with a dangerous weapon. This timely appeal follows. We affirm in part, vacate in part, and remand with orders.
 

 The defendant was charged in connection with the robbery of the Omni Bank located at 5249 Veterans Memorial Boulevard in Metairie. Prior to trial the defendant filed a motion to suppress certain statements that he had made to the police. At the June 20, 2007 hearing on the motion, Sergeant John Carroll of the Jefferson Parish Police Department testified that he had participated in the investigation of the Omni Bank robbery. According to his testimony, Carroll first Lmet the defendant after the defendant was arrested in Orleans Parish on an unrelated weapons charge and transported to the D.E.A. office in Jefferson Parish. Sgt. Carroll spoke to the defendant after advising him of his
 
 Miranda
 
 rights. This initial statement was not recorded, and was interrupted when the parties were asked to leave the premises due to a building inspection taking place at that time. Sgt. Carroll testified that the defendant was thereafter moved back to Orleans Parish for booking on the weapons charge.
 

 Carroll further testified that after interviewing the defendant, the investigators interviewed the defendant’s fiancé and two co-defendants, all of whom identified the defendant from photographs obtained from the bank’s surveillance cameras. Sgt. Carroll then transported the defendant from the Orleans Parish jail to the detective bureau in Jefferson Parish after the defendant agreed to give another statement since his previous statement had been interrupted and was incomplete. Detective David Mascaro testified that he and Sgt. Carroll transported the defendant pursuant to an arrest warrant the day after his previous statement had been interrupted. Prior to giving a statement, the defendant signed a second waiver of his
 
 Miranda
 
 rights. During the interview, the detectives showed the defendant photographs obtained from the bank’s surveillance cameras, and asked the defendant if he could identify the individual in the pictures. After several hours of questioning, the defendant confessed to robbing the Omni Bank.
 

 The defendant’s motion to suppress was denied on June 20, 2007, and trial commenced on August 7, 2007. Three bank employees who were working on the day of the robbery testified at trial. Deirdre Bates, the assistant manager, recalled greeting the defendant as he entered the bank. She testified that he did not respond to her greeting, and that as she moved through the building, she realized that the defendant was following her. She observed the defendant lift his shirt and pull a Lgun out from the inside of his pants. He forced her to the floor, and ordered the remaining patrons and employees to the floor as well.
 

 April York, a bank teller, testified that after the defendant displayed a gun, he jumped over the teller counter and forcibly pulled her out of the way. He then took money out of her teller drawer, jumped back over the counter, and fled the building through the front door.
 

 
 *37
 
 Jane Ainsworth, the manager of the branch, testified that she was working in her office when the robbery occurred. She eventually realized what was happening when she heard the defendant screaming at a teller. She moved towards the floor and observed the defendant jump over the counter and exit the bank. After the robbery was over, Ainsworth locked the door, called the police, and began filling out theft forms in accordance with Omni procedure.
 

 The defendant called no witnesses, nor did he testify on his own behalf.
 

 FIRST ASSIGNMENT OF ERROR
 

 On appeal, the defendant assigns three errors. In his first assignment, the defendant argues that the trial court erred in denying the motion to suppress the identifications and statements, as they were the “fruits of an illegal arrest.” Specifically, the defendant claims that he was arrested without probable cause in Orleans Parish, and that any statement given thereafter was therefore illegal and inadmissible at trial.
 

 Statements made by a defendant during an allegedly illegal detention are inadmissible if they are the product of illegal detention and not the result of an independent act of free will.
 
 State v. Fisher,
 
 97-1133 (La.9/9/98), 720 So.2d 1179. The defendant has the burden of proving “the ground of his motion, except that the State shall have the burden of proving the admissibility of a purported confession 15or statement by the defendant or of any evidence seized without a warrant.” La. C. Cr. P. art. 703(D). The defendant also bears the burden of asserting the basis for his motion to suppress in order to give the State adequate notice so that it may present evidence and address the issue.
 
 State v. Jackson,
 
 04-1388 (La.App. 5th Cir.5/31/05), 904 So.2d 907, 911,
 
 writ denied,
 
 05-1740 (La.2/10/06), 924 So.2d 162. Evidence which is collected in violation of a defendant’s constitutional rights must be excluded at trial subject to several exceptions.
 
 See, e.g., Mapp v. Ohio,
 
 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). A trial court’s decision to deny a motion to suppress is afforded great weight, and will not be disturbed unless the preponderance of the evidence clearly favors suppression.
 
 State v. Williams,
 
 98-1006 (La.App. 5th Cir.3/30/99), 735 So.2d 62,
 
 wmit denied,
 
 99-1077 (La.9/24/99), 747 So.2d 1118.
 

 There is no evidence in the record regarding the legality of the defendant’s initial arrest in Orleans Parish. Furthermore, there is no evidence in the trial record that the defendant gave any statement at the initial interview prior to being interrupted by the building inspection. The record does contain evidence that the defendant was first advised of his
 
 Miranda
 
 rights and that he voluntarily waived those rights prior to giving any statement to Sgt. Carroll in Jefferson Parish the day after the Orleans Parish arrest. There is also evidence that the defendant’s transport from Orleans Parish prison to Jefferson Parish was based on an arrest warrant, though there is conflicting testimony whether the defendant went willingly. As such, it is not possible to deduce whether the defendant’s Orleans Parish arrest was based on probable cause. Moreover, since the defendant was transported to Jefferson Parish pursuant to a valid arrest warrant, his argument that the Orleans arrest was illegal is moot.
 

 | f,The defendant’s confession and identification of himself from the bank’s surveillance photos were admissible because they were given freely and voluntarily and not under duress or intimidation. Based on the record, we find that the trial court was correct in finding that the defendant’s statement was freely and voluntarily
 
 *38
 
 given while he was under custody. Accordingly, this assignment of error is without merit.
 

 SECOND ASSIGNMENT OF ERROR
 

 In his second assignment of error, the defendant argues that the trial court erred in failing to grant a motion for mistrial based on improper comments by the prosecutor during his closing argument. It is well established that closing arguments should be restricted to the evidence admitted or lack thereof, conclusions of fact that may be drawn therefrom, and to the law applicable to the case.
 
 State v. Vincent,
 
 07-239 (La.App. 5th Cir.12/27/07), 978 So.2d 967, 975. The state’s rebuttal should be confined to answering the defendant’s argument, but prosecutors are generally allowed considerable latitude when making closing arguments, id. A conviction will not be reversed due to improper remarks during closing unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.
 
 Id.
 
 at 976.
 

 A trial court is authorized to correct prejudicial remarks by ordering a mistrial or admonishing the jury, at the defendant’s request.
 
 State v. Taylor,
 
 07-93 (La.App. 5th Cir.11/27/07), 973 So.2d 83. However, “much credit should be accorded to the good sense and fair-mindedness of the jurors who have seen the evidence and heard the arguments, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence.”
 
 State v. Martin,
 
 93-0285 (La.10/17/94), 645 So.2d 190, 200.
 

 |7The following statement by the prosecutor is the subject of the defendant’s complaint:
 

 And what about fingerprints? No, you didn’t hear anything about fingerprints. Fingerprints aren’t found that easily. We, granted, could put on a witness to testify about fingerprints, to explain how fingerprints can be located, aren’t always located [sic] any little smudge means that there’s no usable fingerprint. If fingerprints were found and weren’t the defendant’s, though the Defense doesn’t have any duty to call witnesses or experts, they could have done that, also. So, if there were fingerprints found that did not belong to the defendant, the Defense could have called a witness to show you that.
 

 The defendant argues that the prosecutor’s comments regarding the defendant’s presumption of innocence and the necessity for him to prove his innocence essentially shifted the burden of proof to the defendant to prove his innocence. However, the defendant fails to acknowledge the context in which the prosecutor made this statement. The prosecutor was rebutting the defendant’s closing argument wherein defense counsel raised the issue of the lack of fingerprint evidence. Furthermore, the prosecutor acknowledged in his closing that the defendant was not obligated to call any witnesses. The trial court also instructed the jury regarding the State’s obligation to put on evidence to prove the defendant’s guilt. Based on the foregoing, we do not find that the prosecutor’s closing arguments rendered the trial fundamentally unfair so as to warrant a mistrial. Nonetheless, we find it appropriate to remind prosecutors that they would be well advised to tread lightly with respect to a defendant’s failure to call witnesses.
 

 THIRD ASSIGNMENT OF ERROR
 

 In his third assignment of error, defendant argues that his sentence pursuant to La. R.S. 14:64.3 was unconstitutional. He alleges that the trial court’s laimposition of the additional five-year sentence based on its finding that the defendant committed the charged armed
 
 *39
 
 robbery with a firearm violated his constitutional right to due process because it •was not determined by a jury. In addition, the defendant avers that La. R.S. 14:63.3 unconstitutionally subjected him to double jeopardy.
 

 Armed robbery is defined as “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.” La.R.S. 14:64.
 

 La.R.S. 14:64.3 provides:
 

 When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Section shall be served consecutively to the sentence imposed under the provision of La. R.S. 14:64.
 

 In
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court of the United States addressed a statute which authorized a judge to increase a defendant’s maximum prison sentence if the defendant acted with a purpose to intimidate based on the victim’s race. The Court held that such a statute would be violative of a defendant’s due process rights, “as any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt.”
 
 Id.
 
 at 490. The Supreme Court later held that the “relevant ‘statutory maximum’ is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose
 
 without
 
 any additional findings.”
 
 Blakely v. Washington,
 
 542 U.S. 296, 303-304, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004).
 

 | ciThis Court addressed a similar factual situation to the instant case in
 
 State v. Walker,
 
 01-51 (La.App. 5 Cir. 5/30/01), 789 So.2d 86. In Walker, the defendants were charged by bill of information with two counts of armed robbery. Subsequently, the State filed written notice of its intention to apply La. R.S. 14:64.3.
 
 Id.
 
 at 88. At the conclusion of the trial, the jury returned a verdict of guilty as charged and the defendant was sentenced to two ten year prison terms at hard labor.
 
 Id.
 
 In conformity with La. R.S. 14:64.3, the court added an additional five years to the sentence and ordered that the additional five years be served consecutively.
 
 Id.
 
 at 87.
 

 The Walker defendant argued that his sentence was unconstitutional based upon the Fifth Amendment and
 
 Apprendi.
 
 This Court disagreed, reasoning that:
 

 the trial court’s imposition of two five-year sentences under LSA-R.S. 14:64.3, to run consecutively to defendant’s ten year armed robbery sentences, did not increase the penalty beyond the maximum term of ninety-nine years prescribed by the armed robbery statute. Therefore, under the holding in
 
 Appren-di,
 
 there was no due process violation in the trial court’s application of LSA-R.S. 14:64.3 to the instant case.
 

 Id.
 
 at 91.
 

 Here, the defendant received a thirty-five year sentence for armed robbery, and an additional sentence of five years for use a firearm in commission of the crime. The defendant is correct in his assertion that the judge only charged the jury as to the elements of an armed robbery, which included a finding that the defendant was armed with a dangerous weapon. The jury was not specifically charged with finding that the weapon involved in the crime was a firearm. However, the “relevant statutory maximum” for the purposes of
 
 Apprendi
 
 and
 
 Blakely
 
 in the instant case
 
 *40
 
 is ninety-nine years at hard labor, which is the maximum sentence that the defendant could have received without any additional findings. Because the additional sentence did not increase the penalty beyond the | inmaximum term of ninety-nine years, we agree with the reasoning of Walker and hold that there was no due process violation in the trial court’s application of La. R.S. 14:64.3.
 

 The defendant also argues that his sentence under La. R.S. 14:64.3 constituted a double jeopardy violation. It is manifest that “[n]o person shall be subject for the same offense to be twice put in jeopardy of life and limb.” La. Const, art. I, § 15. However, double jeopardy principles are inapplicable to sentence enhancement proceedings.
 
 See, e.g., State v. Linkletter,
 
 77-58596 (La.04/11/77), 345 So.2d 452, 460.
 

 This Court has considered the issue of whether La. R.S. 14:64.3 violates double jeopardy on several occasions and has always answered the question in the negative. For example, in Walker, this Court reasoned that “La. R.S. 14:63.3 does not create a new crime, but simply enhances the penalties for violation of La. R.S. 14:64, the armed robbery statute, when the dangerous weapon used to commit the armed robbery is a firearm.” Walker, 789 So.2d at 92, (citing
 
 State v. Durant,
 
 00-1246 (La.App. 5th Cir.12/27/00), 776 So.2d 1265, n. 1). We also noted that the “statute no more subjects defendant to double jeopardy than would the application of the Habitual Offender Law to enhance a defendant’s sentence.”
 
 Id.
 

 There are no distinctions between the double jeopardy issue raised in Walker, and the case at bar. Accordingly, we find defendant’s allegation to be without merit.
 

 ERROR PATENT REVIEW
 

 The appellant failed to request an error patent review. Regardless, this Court routinely reviews the record for errors patent regardless of whether the defendant makes such a request. La. C. Cr. P. art. 920;
 
 State v. Oliveaux,
 
 75-55321 (La.04/24/75), 312 So.2d 337;
 
 State v. Weiland,
 
 89-584 (La.App. 5th Cir.01/17/90), |, ,556 So.2d 175. The trial court imposed the additional sentence in accordance with La. R.S. 14:64.3 to be served “at hard labor.” Our review of the case indicates that the defendant’s enhanced sentence pursuant to La.R.S. 14:64.3 at the time of the commission of this crime in 2005 did not include a provision that the sentence be served “at hard labor.” That was not included in the statute until the revision in 2006. Accordingly, we vacate this portion of the sentence and remand to the trial court for re-sentencing in accordance with the statute as it was written at the time of the commission of the crime. CONCLUSION
 

 For the reasons set forth herein, we find that the motion to suppress was properly denied and that the prosecutor did not unfairly prejudice the jury during his closing argument. Further, the trial court’s addition of a five-year sentence pursuant to La. R.S. 14:64.3 did not violate the defendant’s due process rights nor did it constitute a double jeopardy violation. We vacate the defendant’s enhanced sentence pursuant to La. R.S. 14:64.3 and remand to the trial court for sentencing in accordance with the provisions of La. R.S. 14:64.3 as written at the time of the commission of the crime for which the defendant was found guilty.
 

 AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH ORDERS.