WALTER J. ROTHSCHILD, Judge.
 

 1 ¿Defendant, Gary F. Pitt, was charged by bill of information with possession of a firearm by a convicted felon, in violation of LSA-R.S. 14:95.1. In the bill of information, the State alleged that defendant was a convicted felon because he had previously been convicted of possession of cocaine, in violation of LSA-R.S. 40:967(C). Defendant pled not guilty. After a one-day trial, a 12-member jury found defendant guilty as charged. The trial court sentenced defendant to 15 years at hard labor without benefit of parole, probation, or suspension of sentence. Defendant appeals.
 

 FACTS
 

 At trial, Detective Elvin Módica of the Jefferson Parish Sheriffs Office testified that on February 8, 2005 (Mardi Gras day), he was patrolling the parking garage at Lakeside Shopping Center in full uniform. According to Detective Módica, defendant drew his attention because he seemed “very nervous” while walking from the parade route to his vehicle in the parking garage. Detective |:iModica placed defendant under surveillance because of his nervous actions. He observed defendant walk up to a 2000 black Pontiac Grand Am and look in all directions before opening it. Defendant leaned into the vehicle for a brief moment, and then leaned out, but he did not actually get into the vehicle.
 

 
 *221
 
 Detective Módica testified that he could not see what defendant was doing when he leaned in the vehicle. However, when defendant leaned out, he saw defendant place a small black handgun in this waistband and cover it with his shirt, as if to conceal it. Detective Módica testified that he was concerned for public safety on the parade route since it was Mardi Gras day, so he decided to investigate to see why defendant had a gun near the parade. Detective Módica also alerted the other officers on duty in that area by radio that he was following defendant, who had a concealed weapon.
 

 Detective Módica testified that he followed defendant quickly trying to close the distance between himself and defendant because they were not far from a massive crowd on the parade route. Before he could catch up with defendant, defendant looked over his shoulder and saw him in full dress uniform. At that point, Detective Módica identified himself as a police officer and ordered defendant to stop and place his hands in air. In response to his orders, defendant lunged forward and attacked him. Defendant did not have his gun drawn and Detective Módica did not draw his gun.
 

 Detective Módica testified that defendant struck him in the face and continued to advance toward him, so he fought to defend himself. During the fight, defendant “turned to blade his body” and dropped his hands toward his waistband. Detective Módica testified that he could not see the front of defendant, so he did not know if defendant was reaching for his gun and trying to pull it out. As the fight continued, defendant’s gun became dislodged from his waistband. Detective Mó-dica testified that Detective Richie Valley and Lieutenant Bruce |4Harrison arrived to assist him. Lieutenant Harrison yelled that defendant’s gun was on the ground. Detective Módica testified that he was able to “touch stun” defendant with a taser in order to try to gain his compliance, but defendant did not respond to it. Together with the other officers, Detective Módica was eventually able to overpower defendant, subdue and handcuff him, and place him under arrest.
 

 According to Detective Módica, the gun was retrieved at the scene by another officer, Sergeant Robbie Gerdes, who later turned the gun over to him. Detective Módica testified that, when he received the gun, it had seven 45-ealiber cartridges in the magazine and one in the chamber. The gun’s hammer was also cocked back in the position that enabled it to be fired. Detective Módica testified that he secured the loaded gun, a Llama 45-caliber semiautomatic handgun, in his vehicle before turning it over to the crime scene technician the next day.
 

 Lieutenant Harrison of the Jefferson Parish Sheriffs Office testified that on the date of the incident, he was working crowd control in the Lakeside Shopping Center parking garage area. He testified that he responded to the call for assistance from Detective Módica. When he arrived at the scene, he saw Detective Módica following quickly behind defendant. Next, he observed a struggle ensue in which punches were traded between Detective Módica and defendant. Lieutenant Harrison testified that, as Detective Módica and defendant continued to fight, he saw defendant go for his waistband, pull out a gun, and throw it. According to Lieutenant Harrison, as he ran toward the encounter, he yelled that there was a gun because he could see Sergeant Gerdes approaching from the other end of the parking lot closer to where the gun landed. Then, he assisted Detective Módica. Eventually, defendant was subdued, handcuffed, and arrested.
 

 
 *222
 
 Sergeant Gerdes of the Jefferson Parish Sheriffs Office testified that on the date of the incident, he responded to an assistance call on the radio by Detective Módica. When he arrived at the scene, he saw Detective Módica struggling with | ¡^defendant. Lieutenant Harrison was approaching the scene at that time. According to Sergeant Gerdes, when Lieutenant Harrison yelled, “Gun, gun, gun,” he observed a gun fall onto the ground. Sergeant Gerdes testified that he immediately retrieved the 45-caliber gun that was cocked and ready to be fired. For safety, he removed the magazine containing seven rounds and cleared the gun by taking one round from the chamber. Then, he established a perimeter to contain the ongoing struggle by making sure that no one from the crowd interfered or took a shot at the officers. He subsequently turned the gun over to Detective Módica.
 

 Aischa Prudhomme, a latent fingerprint examiner for the Jefferson Parish Sheriffs Office Crime Lab, testified that she compared defendant’s fingerprints that she took on the date of trial to a certified copy of defendant’s fingerprint card for his possession of crack cocaine conviction and found that they belonged to the same person.
 

 DISCUSSION
 

 In his sole assignment of error on appeal, defendant claims that the trial court imposed an excessive sentence that was in violation of his constitutional rights. He argues that the trial court should not have imposed the maximum sentence because he is not the most egregious of offenders. Defendant asserts that while he had a gun, he “made no move to use” or fire his gun. He contends that the trial judge did not consider that this was his first offense for being a felon in possession of a firearm.
 

 The State responds that defendant’s sentence is not excessive. The State argues that before sentencing defendant within his discretion and within the bounds of the statute, the trial judge considered that defendant was a convicted felon carrying a loaded firearm at a Mardi Gras parade and showed physical aggression toward Jefferson Parish police officers when confronted.
 

 |fiThe trial judge sentenced defendant to 15 years at hard labor, stating that any lesser sentence would deprecate the seriousness of the offense. The trial judge noted that defendant had a loaded gun that he should not have been carrying and that he placed many lives in danger due to the incident occurring on Mardi Gras day in an area where many people, including families, were present. The trial judge also noted that the lives of the officers were put in danger. Further, the trial judge stated that he had considered the sentencing guidelines under LSA-C.Cr.P. art 894.1 in imposing defendant’s sentence. The trial judge also noted that defendant had “a predisposition to fight police officers and carry the same caliber weapon, a .45 caliber.”
 

 The record before us reveals that defense counsel orally objected to defendant’s sentence as excessive at the time of sentencing. However, he did not make an oral motion for reconsideration of sentence or file a written motion for reconsideration of sentence on the grounds now raised on appeal. LSA-C.Cr.P. art. 881.1(B) states that a motion to reconsider sentence “shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.” Failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. LSA-C.Cr.P. art. 881.1(E);
 
 State v. Zaldivas,
 
 02-690, p. 9 (La.App. 5 Cir. 12/30/02), 836
 
 *223
 
 So.2d 577, 583,
 
 writ denied,
 
 03-0705 (La.10/17/03), 855 So.2d 757. Therefore, defendant’s sentence will only be reviewed for constitutional excessiveness.
 

 The Eighth Amendment to the United States Constitution and Louisiana Constitution Article I, § 20 prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 State v. Nguyen,
 
 06-969, p. 5-6 (La.App. 5 Cir. 4/24/07), 958 So.2d 61, 64,
 
 writ denied,
 
 07-1161 (La.12/7/07),7 969 So.2d 628. In reviewing a sentence for excessiveness, the appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice.
 
 Id.
 
 at 6, 958 So.2d at 64.
 

 In sentencing the defendant, a trial court should consider the defendant’s personal history such as age, family ties, marital status, health, employment record, prior criminal record, seriousness of the offense, and the likelihood of rehabilitation in determining an appropriate sentence.
 
 State v. Crawford,
 
 05-494, p, 6 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, 669. In general, maximum sentences are reserved for cases involving the most serious violations of an offense charged and the worst type of offender. Nevertheless, a trial judge is afforded wide discretion in determining a sentence and a sentence will not be set aside as excessive absent clear abuse of that broad discretion.
 
 State v. Taylor,
 
 04-689, p. 5 (La.App. 5 Cir. 12/14/04), 892 So.2d 78, 81.
 

 LSA-R.S. 14:95.1(B) provides in pertinent part that a person convicted of possession of a firearm by a convicted felon “shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.”
 

 In the present case, prior to sentencing defendant, the trial judge considered defendant’s personal history. He also considered the seriousness of the offense, noting that any lesser sentence would deprecate the seriousness of the offense. Specifically, the trial judge noted that defendant had a loaded gun and had placed many lives in danger, including the lives of the police officers involved in the incident. The trial judge noted that the incident occurred on Mardi Gras day near a parade route that contained a massive crowd.
 

 |sThe trial judge also considered defendant’s criminal record including his conviction for possession of crack cocaine. The trial judge noted that the defendant had shown a predisposition to fight police officers and carry the same caliber weapon. Despite defendant’s claims that he made no move to fire his gun, the testimony of the State witnesses revealed that the gun was loaded and ready to be fired.
 

 Considering the facts of this case, along with the applicable law, we find no abuse of the trial judge’s sentencing discretion, because defendant did not receive an excessive sentence.
 

 ERRORS PATENT
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals that defendant’s sentence is illegally lenient because the trial court failed to impose a mandatory fine.
 

 As previously noted, LSA-R.S. 14:95.1(B) provides in pertinent part that a person convicted of possession of a firearm
 
 *224
 
 by a convicted felon, “shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.” Therefore, defendant was exposed to a sentencing range of ten to fifteen years without the benefit of parole, probation, or suspension of sentence,
 
 and
 
 a fine between one thousand and five thousand dollars.
 

 This Court has the authority to correct an illegally lenient sentence. LSA-C.Cr.P. art. 882. However, this authority is permissive rather than mandatory. In
 
 State v. Campbell,
 
 08-1226, (La. App. 5 Cir. 5/26/09), 15 So.3d 1076,
 
 writ denied,
 
 09-1385 (La.2/12/10), 27 So.3d 842, this Court noted defendant’s indigent status and declined to correct an illegally lenient sentence where the district court |9failed to impose a mandatory fine. In the present case, it is noted that defendant is indigent, since he is represented by the Louisiana Appellate Project, which provides appellate services for indigent criminal defendants in non-capital felony cases. Due to defendant’s indigent status, we decline to remand this matter for imposition of the mandatory fine.
 

 DECREE
 

 For the foregoing reasons, we affirm defendant’s conviction and sentence.
 

 AFFIRMED.